IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JESSE ORLANDO MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-0288 |
| | § | |
| BRIAN WONG, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

Former state inmate Jesse Orlando Martinez (TDCJ #582600) filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, while he was in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Martinez has filed more than one supplement to his complaint and, at the Court's request, he has also provided a more definite statement of his claims. (Docs. # 12, # 19, # 22, # 25, # 30). The defendants have filed separate motions for summary judgment. (Docs. # 40, # 43). The plaintiff has not filed a response to the motions and his time to do so has expired. After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court grants the defendants' motions and dismisses this case for reasons that follow.[1]

---

[1] On October 25, 2007, this case was reassigned to United States District Judge Melinda Harmon pursuant to General Order 2007-10. The case is being handled by the undersigned by agreement of the judges.

## I.    BACKGROUND

Martinez filed a civil rights complaint under 42 U.S.C. § 1983, on May 13, 2005, while he was in custody of TDCJ at the Hughes Unit in Gatesville, Texas.[2] Martinez sues two health care providers employed by the University of Texas Medical Branch ("UTMB") to provide medical treatment for TDCJ inmates, including Ophthalmology Specialist Brian Wong, M.D. and Ophthalmologist Amjad Khokhar.[3] Martinez also sues UTMB Practice Manager Valencia Pollard. Martinez complains that these defendants failed to provide him with adequate medical care in the form of surgery for an "orbital ring fracture" on the left side of Martinez's face.

According to the record, Martinez was assigned to the Telford Unit in New Boston, Texas, on May 1, 2003, when he was involved in an altercation with other inmates. Martinez claims that, during this altercation, he was "struck repeatedly" by another offender who was using a "lock in [a] sock as a weapon." As a result of this incident, Martinez reportedly sustained injury to the area around his left eye. Martinez was treated for his injuries at a local hospital, where a CT scan disclosed a fractured orbital ring. Martinez was then transferred to the John Sealy Hospital in Galveston, which is run by UTMB and provides specialized care for TDCJ inmates. After Martinez was evaluated by specialists at UTMB, he was transferred to the Hughes Unit in Gatesville, Texas, where Pollard is employed as a

---

[2]    Martinez reports that he was convicted and sentenced to TDCJ on March 4, 1991. (Doc. # 30, at 1-2). H discharged his sentence and was released from TDCJ on February 2, 2007, sometime after he filed the complaint in this case.

[3]    In the pleadings, Dr. Khokhar is identified incorrectly as "Amjad Kholohar."

Practice Manager in the medical department. In 2004, Martinez received follow-up care for his injuries at a UTMB clinic that specializes in ophthalmology. Although Martinez believed that he needed surgery to repair his orbital ring fracture, specialists determined that the fracture had healed and that surgery was not required.

In his pending civil rights complaint under 42 U.S.C. § 1983, Martinez claims that the defendants denied him adequate medical care for his injuries in violation of the Eighth Amendment. Martinez complains that Dr. Wong and Dr. Khokhar denied him surgery to repair the orbital ring fracture that he sustained on May 1, 2003, in deliberate indifference to his health. Martinez complains further that Pollard violated his civil rights by interfering with a referral for surgery. Martinez seeks injunctive relief in the form of a court order directing UTMB to perform surgery to repair the orbital ring fracture. Martinez also seeks compensatory damages for his mental anguish. The defendants have moved for summary judgment, arguing that Martinez is not entitled to the relief that he seeks. The parties' contentions are discussed further below under the governing standard of review.

## II.  STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is

immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law. Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The

nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.").  Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.

1995). Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

The plaintiff has not filed a response to the motion for summary judgment and the time for him to do so has expired. According to this Court's local rules, responses to motions are due within twenty days, S.D. TEX. R. 7.3, unless the time is extended. Any failure to respond is taken as a representation of no opposition. S.D. TEX. R. 7.4. The Court specifically directed the plaintiff to respond within thirty days to any dispositive motion filed by the defendants or face dismissal for want of prosecution. (Doc. # 31, ¶ 4). Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default. *See Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279). In that regard, the movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the reviewing court may not grant the motion regardless of whether any response was filed. *See Hetzel*, 50 F.3d at 362 n.3. Nevertheless, in determining whether summary judgment is warranted, the district court may accept as undisputed the facts set forth in the unopposed motion. *See Beard v. Banks*, — U.S.

—, 126 S. Ct. 2572, 2577 (2006); *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

### III. DISCUSSION

Invoking the Eleventh Amendment, all of the defendants assert that they are immune from Martinez's claims for monetary damages against them in their official capacity. The defendants argue further that Martinez cannot demonstrate a constitutional violation of the Eighth Amendment and that they are entitled to qualified immunity from suit in their personal or individual capacity. The defendants' arguments are addressed in turn.

#### A. Immunity from Official Capacity Claims

All of the defendants are employed in one capacity or another by UTMB, which is a state agency. As employees of the State of Texas, the defendants argue that the Eleventh Amendment to the United States Constitution bars any claim for monetary relief against them in their official capacity. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Thus, federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Vogt v. Board of Comm'rs, Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002).

Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency. *See*

*Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002). As instrumentalities of the state, UTMB and TDCJ are immune from a suit for money damages under the Eleventh Amendment. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). It is also settled that the Eleventh Amendment bars a recovery of money damages under § 1983 from state employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

In this case, Martinez sues the defendants for actions taken during the course of their employment with the State of Texas. To the extent that Martinez seeks monetary damages in this case, the Eleventh Amendment bars his claims against the defendants as state employees.[4] It follows that the defendants are entitled to immunity under the Eleventh Amendment from Martinez's claims for money damages against them in their official capacity. Accordingly, the defendants are entitled to summary judgment on this issue.

### B. Qualified Immunity from Individual Capacity Claims

The defendants argue that Martinez has failed to establish a constitutional violation and that, even assuming that such a violation occurred, they are entitled to qualified immunity from his Eighth Amendment claims against him. Public officials acting within the

---

[4] A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect. *See Aguilar*, 160 F.3d at 1054 (citing *Ex parte Young*, 209 U.S. 123 (1980)). Martinez was released from TDCJ on February 2, 2007. Because he is no longer in state custody, his claim for injunctive relief has become moot. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *see also Cooper v. Sheriff, Lubbock County, Tex*., 929 F.2d 1078, 1084 (5th Cir. 1991) (holding that an inmate's transfer from county jail to state prison rendered moot his claims for injunctive relief). Alternatively, Martinez is not entitled to relief because, for reasons discussed further below, he fails to demonstrate a constitutional violation in this case.

scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.,* 245 F.3d 447, 456 (5th Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004). The threshold question has two parts. The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Scott v. Harris*, — U.S. —, —, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If the defendants' actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537 (citations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with the defendants' contention that the plaintiff's Eighth Amendment claim lacks merit. Accordingly, the Court first addresses whether Martinez has raised a genuine issue of material fact about whether the defendants committed a constitutional violation under the Eighth Amendment standard that governs the level of medical care in the prison context.

### 1.     **Eighth Amendment – Medical Care**

To prevail under 42 U.S.C. § 1983, Martinez must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical

10

care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that

11

prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted).

In this instance, Martinez complains that he was denied adequate care after he sustained an injury to the area around his left eye during an altercation with other inmates on May 1, 2003. Martinez claims that Dr. Wong and Dr. Khokhar failed to provide him adequate care by denying him surgery for the left orbital ring fracture that he suffered as a result of the altercation. Martinez also blames Valencia Pollard, who works as a UTMB Practice Manager at the Hughes Unit, for denying or interfering with a purported referral for surgery. All three of the defendants have provided affidavits and copies of Martinez's medical records, documenting the care that he received at TDCJ and UTMB after the May 1, 2003 incident. (Docs. # 40, # 43). Martinez's Eighth Amendment claims against the defendants are discussed separately below, beginning with his allegations against Pollard.

### a. Valencia Pollard

In her affidavit, Pollard explains that her job duties as a Practice Manager are primarily administrative and do not involve any "direct patient care." She has no authority to "make a referral or stop a referral" for treatment at one of the specialty clinics at the John Sealy Hospital that is run by UTMB in Galveston. She also has no authority over appointments for care. Pollard insists that she was "not involved in any process of whether or not Martinez would receive surgery for his orbital fracture." Because she had no personal

12

involvement with Martinez or his prescribed medical care, Pollard maintains that his complaint against her fails to state a claim.

Personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and the defendant's conduct. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). In order to successfully plead a cause of action in § 1983 cases, a civil rights plaintiff must "enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Martinez's allegations are not sufficient to raise a genuine issue of material fact regarding Pollard's involvement with his prescribed course of medical care. In that regard, Martinez's conclusory allegations and generalized assertions are not sufficient to state a claim; particular facts are required to specify the personal involvement of each defendant. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990). Because Martinez does not allege specific facts demonstrating that Pollard had the requisite personal involvement with his medical care, he fails to state an Eighth Amendment claim against her in this instance.[5]

---

[5] The complaint also lists TDCJ Director of Clinical Services Ahia Shabazz and Grievance Coordinator Kelli Ward as defendants. Martinez alleges that these individuals responded inadequately to the grievances he filed concerning his orbital ring fracture. The Court did not request an answer from these defendants because, as with Pollard, Martinez does not allege that these individuals had any personal involvement in the decision whether or not to schedule surgery or that either one was responsible for denying access to medical care. The record confirms their lack of personal involvement. Accordingly, for the same reasons outlined above, the Court concludes that Martinez fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983 with regard to Shabazz or Ward.

### b. Dr. Wong and Dr. Khokhar

The medical records show that Martinez was treated at the prison infirmary immediately following his altercation with other inmates on May 1, 2003. Martinez was taken to a local hospital under contract with TDCJ, the Wadley Regional Medical Center in Texarkana, Texas, where a CT scan of his face disclosed a "left orbital blow-out fracture." Martinez was then transferred to the UTMB John Sealy Hospital in Galveston. On May 6, 2003, Martinez was evaluated by an "upper-level resident" at the UTMB Ophthalmology Clinic. After reviewing the CT scan done at the Wadley Regional Medical Center, medical personnel planned to obtain another CT scan and then schedule follow-up care for Martinez at the Oculoplastics Clinic,[6] where Dr. Wong serves as a consulting faculty member, in June of 2003.[7]

The Oculoplastics Clinic obtained another CT scan of Martinez's face on May 23, 2003, and found that he had an "old minimally displaced left orbital floor fracture with soft tissue thickening." No other facial fractures were noted. After reviewing the results of Martinez's CT scan, Martinez's follow-up appointment with the Oculoplastics Clinic was

---

[6] According to the defendants "Oculoplastic procedures" refer to "a large variety of surgical procedures that deal with the orbit (eye socket), eyelids, tear ducts, and the face." (Doc. # 40, at 3, n.11). "These procedures include repair of droopy eyelids, repair of tear duct obstructions, orbital fracture repairs, removal of tumors in and around the eyes, and facial rejuvenation." (*Id.*).

[7] Dr. Wong is an Associate Professor in the Department of Ophthalmology at UTMB and a physician who is board certified in Ophthalmology. (Doc. # 40, Exhibit A, Affidavit Brian Wong, M.D.). The defendants explain that "Ophthalmology is a branch of medical science dealing with the structure, functions, and diseases of the eye." (Doc. # 40, at 3, n.10). Dr. Wong also serves on the faculty for the Oculoplastics Clinic at the Texas Department of Criminal Justice each month, where he is available as a consultant.

rescheduled for July of 2003. Medical records show that, on July 2, 2003, when Martinez was scheduled to depart from the Hughes Unit for his rescheduled appointment at UTMB in Galveston, Martinez refused his appointment. Martinez was seen by health care workers at the Hughes Unit in September and October of 2003, where another referral was made to return to the Oculoplastics Clinic on the next available date.

Martinez was seen at the Ophthalmology Clinic on March 15, 2004, where he complained of double vision. The physician who examined him found some "enophthalmos," meaning a "backward displacement of the eyeball into the orbit" of his left eye. Martinez was scheduled to return to the clinic on the next available opportunity.

Martinez returned to the clinic again on May 6, 2004. On this occasion, Martinez was seen by Dr. Wong and two upper-level residents in the Oculoplastics Clinic. Dr. Khokhar is one of the ophthalmologists who examined Martinez on this date, along with Dr. Wong, and he performed some of the ophthalmological testing.[8] During this examination, Martinez reported having double vision "sometimes while reading and watching TV." The doctors examined and tested Martinez, but found no double vision "at the primary position." They noted that Martinez had full extra-ocular movement for both eyes and no defect of movement. Martinez's left eye was sunken slightly and there was some numbness in his left cheek. Dr. Wong concluded that Martinez did have an old blow-out fracture on the left, but also that he had some vision problems due to a traumatic nerve injury, but not from the

---

[8] According to Dr. Khokhar, this is the only interaction that he had with Martinez. (Doc. # 40, Exhibit B, Affidavit of Amjad Khokhar, M.D.).

fracture. Dr. Khokhar also believed that Martinez's symptoms were not related to the blow-out fracture, but were more likely due to "traumatic optic nerve injury."

Dr. Wong and Dr. Khokhar noted that Martinez complained of sinus pain around the area of his left eye. The doctors ordered another CT scan to evaluate Martinez's complaints of peri-orbital pain. On June 6, 2004, Martinez had another CT scan of his face. This CT scan showed that Martinez had chronic nasal airway abnormalities, but it did not identify any orbital fracture. According to Dr. Wong and Dr. Khokhar, the CT scan results confirmed that the orbital fracture was healed and there was no fracture defect to repair. Martinez did not return to the UTMB Clinic for additional treatment, and he was subsequently released from TDCJ in February of 2007.

In response to Martinez's claim that he was wrongfully denied surgery, both Dr. Wong and Dr. Khokhar maintain that surgery was not needed to correct the orbital fracture sustained by Martinez on May 1, 2003. Dr. Wong explains that the injury did not meet the requirements for surgical intervention:

> The indications for surgical repair of "orbital blow-out" fracture are (1) documented double vision; (2) fracture displacement greater than 50%; and (3) sunken-in eye 3mm or more. Mr. Martinez did not meet any of these requirements/findings and, therefore, was not a candidate for surgical intervention. There is no specific treatment for the type of injury that Mr. Martinez suffered other than observation. It is not the standard of care for an Oculoplastic surgeon to repair this level of injury and, in fact, an attempted repair can actually cause more damage to the nerves and adjacent structures.

Dr. Wong concludes that, based on his review of the case, his training, and experience in the subspecialty of Oculoplastics Ophthalmology, Martinez "did not and does not need surgical intervention for the orbital fracture he sustained on May 1, 2003." Dr. Wong opines further

16

Martinez received appropriate care, evaluation, diagnosis, and treatment for the injury that he sustained. Dr. Wong maintains, therefore, that he did not deny Martinez adequate medical care for his condition and that no other physician at UTMB was deliberately indifferent to Martinez's medical needs.

Martinez concedes that he was provided with care after the May 1, 2003 incident, but complains that he was denied surgery. To the extent that Martinez disagrees with the level of care that he received, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

Martinez appears to claim that the defendants were negligent, suggesting that the doctors committed medical malpractice by denying him surgery. It is well established that allegations of unsuccessful medical treatment, acts of negligence, or medical malpractice "do not constitute deliberate indifference[.]" *Gobert*, 463 F.3d at 347 (citations omitted). Thus, allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment claim. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *see also*

17

*Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

Martinez does not allege or show that he was refused care or that the defendants intentionally treated him incorrectly with wanton disregard for his medical condition. *See Domino,* 239 F.3d at 756. His allegations concerning the level of care that he received are not sufficient to establish that he was treated with deliberate indifference and do not state a violation of the Eighth Amendment. Accordingly, Martinez fails to establish a constitutional violation against Dr. Wong or Dr. Khokhar.

### 2.    Objective Reasonableness

Because Martinez has failed to establish a constitutional violation, the Court need not proceed to the final step of the qualified immunity analysis. *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). Nevertheless, the defendants argue that, even if a violation occurred, they are entitled to qualified immunity from suit because they acted in good faith and their conduct was objectively reasonable under the circumstances. To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (emphasis added). If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341. "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to

18

qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

Where qualified immunity is asserted, Martinez, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them. *See Michalik*, 422 F.3d at 262. Martinez has not filed a response to the summary judgment motion and his pleadings do not otherwise overcome the defendants' assertion of qualified immunity. As outlined above, there is no evidence that Pollard had any personal involvement in the decisions that were made about Martinez's medical care. The summary judgment record reflects that Martinez received care following his injury, including evaluations by Dr. Wong and Dr. Khokhar at the Ophthalmology Clinic and the Oculoplastics Clinic. These specialists determined that Martinez's injuries did not require surgery and that surgical intervention may do more harm than good. Martinez's unsupported allegation that he was denied adequate medical care does not raise a genuine issue of material fact on whether the defendants' actions were unreasonable under the circumstances and is not sufficient to overcome the defendants' assertion of qualified immunity in this instance. The Court concludes, therefore, that summary judgment on the defendants' assertion of qualified immunity is warranted.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The motion for summary judgment by Dr. Wong and Dr. Khokhar (Doc. # 40) is **GRANTED**.

2. The motion for summary judgment by Valencia Pollard (Doc. # 43) is **GRANTED**.

3. The complaint in this case is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas, on June 9th, 2008.

Nancy F. Atlas
United States District Judge